UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GOULDS PUMPS (IPG), LLC,

                Plaintiff,                        **DECISION AND ORDER**

         v.                                   6:21-CV-06367 EAW

UNITED STEEL WORKERS LOCAL
UNION NO. 3298,

                Defendant.
_____

## INTRODUCTION

Plaintiff Goulds Pumps (IPG), LLC ("Plaintiff") brings the instant action pursuant to the Federal Arbitration Act, 9 U.S.C. §10(a) *et seq.* (the "FAA"), and the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185 *et seq.* (the "LMRA"), seeking vacatur of an opinion and award (the "Arbitration Award") issued by arbitrator Douglas J. Bantle (the "Arbitrator") on February 11, 2021. (Dkt. 1). Defendant United Steel Workers Local Union No. 3298 ("Defendant") has asserted a counterclaim seeking confirmation of the Arbitration Award pursuant to the LMRA. (Dkt. 4 at 10).

Currently before the Court are the parties' competing motions for summary judgment. (Dkt. 14; Dkt. 15). For the reasons discussed below, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted, except to the extent that it seeks an award of attorney's fees and costs.

- 1 -

# BACKGROUND

## I. Factual Background

The following facts are derived from Plaintiff's Statement of Undisputed Material Facts submitted in support of its motion for summary judgment (Dkt. 14-28), Defendant's Statement of Undisputed Material Facts submitted in support of its motion for summary judgment (Dkt. 15-2), the parties' respective responses thereto (Dkt. 19-2; Dkt. 20-1), and the exhibits submitted by the parties. Unless otherwise noted, these facts are undisputed.

Plaintiff is a foreign limited liability company with its principal place of business in Seneca Falls, New York. (Dkt. 14-28 at ¶ 1; Dkt. 20-1 at ¶ 1). It "is engaged in the development, design, manufacturing and installation of valves that are used in a variety of industrial settings" and is in an industry affecting interstate commerce. (Dkt. 14-28 at ¶¶ 1-2; Dkt. 20-1 at ¶¶ 1-2). Defendant is a "labor organization" as defined in 29 U.S.C. § 185(a). (Dkt. 14-28 at ¶ 3; Dkt. 20-1 at ¶ 3).

Plaintiff and Defendant are parties to a collective bargaining agreement ("CBA") that became effective on July 29, 2017, and expires on July 30, 2022. (Dkt. 14-28 at ¶ 7; Dkt. 20-1 at ¶7; *see also* Dkt. 1-2). Article VII of the CBA sets forth a grievance procedure and further provides for arbitration of grievances that are not resolved to the parties' satisfaction. (Dkt. 1-2 at 35-39). Further, Article XI of the CBA sets forth specific procedures for grievances and arbitrations in cases involving discharge. (*Id.* at 42-43).

On December 26, 2018, Plaintiff discharged bargaining unit employee Paul Morrin ("Grievant") for alleged violations of Plaintiff's rules, including theft of time. (Dkt. 15-2 at ¶ 2; Dkt. 19-2 at ¶ 2). Plaintiff further asserts the following additional reasons for

Grievant's discharge: (1) Grievant left Plaintiff's campus without punching out on several occasions; (2) Grievant was paid for hours that he was not on Plaintiff's campus working; (3) Grievant did not keep accurate records of time worked; and (4) Grievant did not follow Plaintiff's established operating procedures and policies. (Dkt. 19-2 at ¶ 2).

It is Plaintiff's position that it discovered on December 26, 2018, that Grievant was leaving work to attend to his personal laundromat business without punching out, and that this was the basis for Grievant's termination. (Dkt. 14-28 at ¶ 5). Defendant maintains that Plaintiff did not have proper cause to terminate Grievant. (Dkt. 20-1 at ¶ 5).

Defendant filed a grievance regarding Plaintiff's termination of Grievant on December 26, 2018. (Dkt. 14-28 at ¶ 6; Dkt. 20-1 at ¶ 6). The grievance was processed in accordance with the terms of the CBA and proceeded to arbitration. (Dkt. 14-28 at ¶ 7; Dkt. 20-1 at ¶ 7).

The Arbitrator held a hearing on February 12 and 13, 2020, in Seneca Falls, and remotely via videoconference on October 29, 2020. (Dkt. 14-28 at ¶ 7; Dkt. 15-2 at ¶ 5; Dkt. 19-2 at ¶ 5; Dkt. 20-1 at ¶ 7). At the hearing, the Arbitrator requested and obtained consent from the parties to audio record the proceeding for his own use only. (Dkt. 14-28 at ¶ 8; Dkt. 15-2 at ¶ 7; Dkt. 19-2 at ¶ 7; Dkt. 20-1 at ¶ 8).

The Arbitrator issued the Arbitration Award on February 13, 2021, sustaining Defendant's grievance and ordering that Grievant be reinstated with full back pay and benefits. (Dkt. 1-1; Dkt. 14-28 at ¶ 9; Dkt. 20-1 at ¶ 9). The Arbitration Award was delivered to counsel for both parties via email at 2:14 p.m. on February 13, 2021. (Dkt. 14-28 at ¶ 12; Dkt. 20-1 at ¶ 14).

At 2:52 p.m. on February 13, 2021, counsel for Plaintiff sent the Arbitrator an email requesting his "transcript recordings." (Dkt. 1-3). The Arbitrator sent a reply email at 5:13 p.m. stating that no such recordings existed and that "[a]s a matter of course, when I render a decision, my notes and any records are destroyed, per the advice of the National Academy of Arbitrators [NAA]." (Dkt. 1-4).

On February 17, 2021, Plaintiff's counsel sent the Arbitrator an email asking for "any resources concerning the Academy's position/advice about the destruction of notes and transcripts upon the rendering of a decision." (Dkt. 1-5). The Arbitrator sent a response email later that day indicating that he was not aware of any writings on the topic but that he had been a member of the NAA since the 1990s and that "Legal Representation reps" for the organization had "over and over again" advised that upon rendering a decision, arbitrators should destroy their notes and any recordings they had made for their own use. (Dkt. 1-6).

Plaintiff has not complied with the Arbitration Award and has not reinstated Grievant's employment nor provided him back pay and benefits. (Dkt. 15-2 at ¶ 10; Dkt. 19-2 at ¶ 10).

## II.     Procedural Background

Plaintiff commenced the instant action on May 5, 2021. (Dkt. 1). Defendant filed its answer and counterclaim on June 16, 2021. (Dkt. 10). The parties agreed that no discovery was necessary. (Dkt. 12 at 1).

The instant competing motions for summary judgment were filed on July 16, 2021. (Dkt. 14; Dkt. 15). Responses were filed on August 20, 2021 (Dkt. 19; Dkt. 20), and replies

- 4 -

were filed on September 3, 2021 (Dkt. 21; Dkt. 22).  The Court heard oral argument on January 24, 2022, at which time it reserved decision.  (Dkt. 24).

## DISCUSSION

I. **Standard of Review of Motions for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d

Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Standard of Review of the Arbitration Award

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 . . ., provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir.1998). The FAA also empowers a party to an arbitration proceeding to "apply to the court . . . for an order confirming the award," which the court "must grant . . . unless the award is vacated, modified, or corrected[.]" 9 U.S.C. § 9. However, § 301 of the LMRA is "analytically distinct from the FAA." *Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Loc. 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 54 (2d Cir. 2001); *see also Time Warner Cable of New York City LLC v. Int'l Bhd. of Elec. Workers*, 170 F. Supp. 3d 392, 412 (E.D.N.Y. 2016) ("The LMRA, rather than the Federal Arbitration Act ('FAA') governs actions involving contracts of employment of . . . workers engaged in foreign or interstate commerce." (quotation omitted)), *aff'd,* 684 F. App'x 68 (2d Cir. 2017). Nevertheless, in deciding a case under § 301 of the LMRA, courts "at times draw upon provisions of the FAA, but by way of guidance alone." *Coca-Cola Bottling Co.*, 242 F.3d at 54; *see also Time Warner Cable*,

170 F. Supp. 3d at 412 ("[F]ederal courts enforcing labor arbitration awards look to the FAA to guide the development of rules of federal common law to govern such disputes pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." (quotation omitted)).

The Court's review of a labor arbitration award under the LMRA is "narrowly circumscribed and highly deferential."  *ABM Indus. Grps., L.L.C. v. Int'l Union of Operating Eng'rs, Loc. 30, 30A, 30B, AFL-CIO*, 968 F.3d 158, 161 (2d Cir. 2020) (quotation omitted).  In particular, the Court "may not review the arbitrator's decision on the merits, but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id*. (quotations omitted).  As the Supreme Court explained more than 30 years ago:

> Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances.  In such cases, . . . the courts play only a limited role when asked to review the decision of an arbitrator.  The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc*., 484 U.S. 29, 36 (1987).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id*. at 38.  In other words, "[a]s long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own

brand of industrial justice, it must be confirmed." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016).

The FAA allows for vacatur of an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[.]" 9 U.S.C. § 10(a)(3). The Second Circuit has held that this provision of the FAA allows for vacatur "only if fundamental fairness is violated." *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 (quotation omitted). However, the Second Circuit has "never held that the requirement of 'fundamental fairness' applies to arbitration awards under the LMRA . . . and . . . the circuits are divided on this question. . . ." *Id*. at 546 n.13 (declining to reach issue).

### III.    The Arbitration Award Must be Confirmed

Plaintiff argues that the Court should vacate the Arbitration Award because: (1) the Arbitrator committed "misconduct" that rendered the proceeding "fundamentally unfair" by destroying his notes and audio recordings; (2) the Arbitrator misrepresented the contents of a joint exhibit in order to reach his desired outcome; (3) the Arbitrator intentionally mischaracterized certain testimony; and (4) the Arbitrator made a finding (discussed in more detail below) that was unsupported by any evidence of record. (Dkt. 14-29). Defendant, on the other hand, contends that the Arbitration Award was fully consistent with the CBA and must be confirmed. (Dkt. 15-1). Defendant further seeks an award of attorney's fees and costs. (*Id*. at 10). For the reasons set forth below, the Court agrees

with Defendant that confirmation of the arbitration award is required. However, the Court does not find, on the record before it, that attorney's fees and costs should be awarded.

### A. The Arbitrator did not Engage in Misconduct

Turning first to Plaintiff's "misconduct" argument, as noted above, it is not even clear that the FAA's "fundamental fairness" requirement applies in the context of the Court's review of an arbitration award under § 301 of the LMRA. *See Nat'l Football League Mgmt. Council*, 820 F.3d at 546 n.13; *see also Johnson v. Nat'l Football League Players Ass'n*, No. 17 CIV. 5131 (RJS), 2018 WL 8188558, at *15 (S.D.N.Y. Oct. 3, 2018) ("[T]he Second Circuit has explicitly declined to hold that the FAA requirement of 'fundamental fairness' and its 'evident partiality' standard for vacatur apply in the LMRA context."), *aff'd*, 820 F. App'x 51 (2d Cir. 2020). However, the Court need not and does not reach that issue, because Plaintiff has not shown in any event that the Arbitrator's actions in destroying his notes and audio recordings constituted misconduct, let alone misconduct that rendered the proceeding fundamentally unfair.

As an initial matter, the Court notes that Plaintiff suggests, with no apparent factual basis, that the Arbitrator "may have destroyed his notes after receiving counsel's email at 2:52 PM." (Dkt. 19 at 12). This is pure speculation by Plaintiff, unsupported by any evidence of record, and the Court has no basis to impute such conduct to the Arbitrator. The Arbitrator's explanation that he has a consistent practice of destroying his notes and audio recordings is plausible on its face and Plaintiff has not cited any evidence of a nefarious purpose on the Arbitrator's part.

Further, although Plaintiff refers to the Arbitrator's notes and audio recordings as "the record" in this case, it is clear that they did not constitute an official transcript of any kind. To the contrary, Plaintiff concedes that the Arbitrator sought and received consent of the parties to record the proceedings for his own use only. (*See* Dkt. 19-2 at 3). Further, while the Arbitrator did cite to his notes within the Arbitration Award, nothing required him to do so (as opposed to simply reciting his own recollection of the testimony and evidence), and Plaintiff has cited no authority for the proposition that an arbitrator's reference to his own notes transforms them into a formal record or requires that they be produced to the parties.[1] The Court recognizes that it seems unusual for an arbitrator's notes to be referred to in his decision as his "Official Hearing Notes," but that does not change the analysis—namely, that the destruction of an arbitrator's notes that were not required to be maintained does not somehow constitute misconduct.

It is, of course, not uncommon for arbitration proceedings to lack a formal record. *See, e.g., Success Sys., Inc. v. Maddy Petroleum Equip., Inc.*, 316 F. Supp. 2d 93, 98 (D. Conn. 2004) ("[A]s frequently occurs in arbitrations, the parties chose not to incur the expense of having the testimony before the arbitrator transcribed or audio taped. Accordingly, there is no record of the testimony that was presented to the arbitrators."); *Mutual Redevelopment Houses, Inc. v. Local 32B-32J, Service Employees Int'l Union*, 700 F. Supp. 774, 776 (S.D.N.Y. 1998) ("No transcript of the arbitration proceeding was made,

---

[1] Indeed, in his email to the Arbitrator on February 13, 2021, Plaintiff's counsel did not ask for copies of the Arbitrator's notes, but instead asked only for "transcript recordings." (Dkt. 1-4). In other words, based on this written communication, Plaintiff did not take the position initially that it was entitled to copies of the Arbitrator's notes.

which is not unusual for arbitrations of this nature."). No such formal record needs to be made, because "by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quotation omitted). Indeed, generally, an arbitrator is not even required to set forth the rationale for his decision. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("The arbitrator's rationale for an award need not be explained[.]"). Further, nothing in the CBA required the Arbitrator to create or maintain a record of the hearings.

Plaintiff has cited to no cases in which a court found that an arbitrator engaged in misconduct by destroying his own notes and audio recordings, nor has the Court uncovered any such case in its own research. Moreover, *Home Indemnity Co. v. Affiliated Food Distributors, Inc.*, No. 96 CIV. 9707 (RO), 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997), which Plaintiff claims supports its position (*see* Dkt. 14-29 at 15), is wholly inapposite. In the *Home Indemnity* case, without conducting "even a threshold review of the underlying dispute or its merits in relation to either party's cause," the arbitration panel refused to allow one of the parties access to disputed documents unless it posted nearly $500,000 in security. 1997 WL 773712 , at *2-3. Here, Plaintiff was allowed full access to all the evidence relied upon by the Arbitrator—it was present at every stage of the proceedings and could have hired a stenographer to create an official transcript if it believed one was necessary.

In sum, Plaintiff's claim of misconduct by the Arbitrator lacks support in either fact or law. Accordingly, it provides no basis for vacatur of the Arbitration Award.

### B. The Arbitration Award is Grounded in the CBA

Plaintiff's "remaining challenges to the [Arbitration] Award are no more than a disagreement with the Arbitrator's interpretation of the [CBA] and the decision on the merits." *Baugh-Scott v. Sallie Mae, Inc.*, No. 14-CV-3088 JMF, 2014 WL 5493243, at *4 (S.D.N.Y. Oct. 30, 2014). More specifically, Plaintiff takes issue with the Arbitrator's conclusion that Plaintiff lacked proper cause to discharge Grievant and his assessment of certain evidence.

In order to analyze these arguments by Plaintiff, the Court must first briefly summarize the Arbitrator's factual findings. In relevant part, the Arbitrator concluded that Plaintiff and Defendant had entered into an agreement whereby, in exchange for moving from the day shift to the night shift in order to train a new employee, Grievant was permitted to leave the work site without loss of pay to attend to his personal laundromat business so long as he carried a radio or cell phone with him. (*See* Dkt. 1-1). In reaching this conclusion, the Arbitrator relied in part on a written statement made by Plaintiff's former superintendent, Michael Laird ("Laird"), as well as Laird's testimony. (*Id.*). The Arbitrator also concluded that Laird did not have the authority to unilaterally terminate the agreement, inasmuch as it was entered into by Plaintiff's human resources manager and Defendant's president. (*Id.*).

Plaintiff argues that the Arbitrator misrepresented the contents of Laird's statement, mischaracterized Laird's testimony, and had no evidentiary basis for concluding that Laird lacked the ability to terminate the purported agreement. (Dkt. 14-29 at 16-18). However, as the Second Circuit has recently reiterated, under § 301 of the LMRA, the Court "may

not review the arbitrator's decision on the merits." *ABM Indus.*, 968 F.3d at 161. Instead, the Court may "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* (quotation omitted). "Whether an arbitrator has exceeded his authority . . . focuses on whether he had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether he correctly decided that issue." *Baugh-Scott*, 2014 WL 5493243, at *4. "In other words, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (citation omitted).

Here, Article IX of the CBA provides that Plaintiff has the right to suspend or discharge employees "for proper cause." (Dkt. 1-2 at 41). Article VII provides that, in deciding an appeal of a grievance, an arbitrator shall have the authority to "pass upon grievances timely presented concerning the meaning, interpretation of any provision of [the CBA] or compliance therewith[.]" (*Id.* at 38). Finally, Article XI provides that in the event it is determined "by an arbitrator in accordance with the Grievance Procedure that [an] employee has been discharged or suspended unjustly, [Plaintiff] shall reinstate the employee and pay full compensation at the employee's regular rate of pay for the time lost." (*Id.* at 42-43). These provisions, read together, unmistakably give the Arbitrator the authority to reach the issues he did in this case: namely, whether Grievant was unjustly discharged without proper cause and thus was entitled to reinstatement and back pay.

Accordingly, it is of no moment whether the Arbitrator was mistaken, even gravely so, in his interpretation and assessment of the evidence of record and the conclusions he drew therefrom. *See Misco*, 484 U.S. at 36-38 ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *see also Nat'l Football League Mgmt. Council*, 820 F.3d at 536 ("We are . . . not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement, but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement. Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, courts are not permitted to substitute their own. It is the arbitrator's construction of the contract and assessment of the facts that are dispositive, however good, bad, or ugly." (citations and quotation omitted)).

To the extent Plaintiff is attempting to argue bias on the part of the Arbitrator, the Court reiterates that "the Second Circuit has explicitly declined to hold that the FAA . . .

'evident partiality' standard for vacatur appl[ies] in the LMRA context." *Johnson*, 2018 WL 8188558, at *15. Moreover, Plaintiff's bias argument is merely a repackaging of its merits-based contentions—in essence, it contends that no reasonable arbitrator could have disagreed with its position and so the fact that the arbitrator found in Defendant's favor is evidence of partiality. However, "[a] subjective disagreement with a substantive ruling cannot give rise to a finding of partiality" by an arbitrator. *Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 354 (S.D.N.Y. 2014), *aff'd*, 619 F. App'x 37 (2d Cir. 2015). While Plaintiff clearly vehemently disagrees with the Arbitrator's interpretation of the evidence, that does not warrant a finding of bias.

Put simply, Plaintiff's arguments in this case do not address the question the Court must answer under the LMRA—was the arbitrator deciding an issue he had no authority to decide? Instead, they focus on the merits of his determinations, into which this Court has no authority to inquire. The Court accordingly must affirm the Arbitration Award.

### IV.     The Court Declines to Award Defendant Attorney's Fees and Costs

The Court turns lastly to Defendant's request for attorney's fees and costs.[2] Defendant concedes that "Section 301 of the LMRA does not expressly provide for the

---

[2]     In its opposition to Plaintiff's motion for summary judgment and its reply in support of its motion for summary judgment, Defendant also suggests without elaboration or argument that the Court should award it pre-judgment interest. (Dkt. 20 at 19; Dkt. 22 at 9). Defendant did not seek such relief in its initial motion for summary judgment. "The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." *Serv. Emps. Int'l Union, Loc. 32BJ, AFL-CIO v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). Having made no argument in favor of its request, Defendant has not persuaded the Court that it should award pre-judgment interest in this case.

recovery of attorney's fees and costs in actions to confirm labor arbitration awards." (Dkt. 15-1 at 18 (citing 29 U.S.C. § 185)). However, Defendant appeals to this Court's inherent equitable power to award attorney's fees. (*Id.*).

"A court may, pursuant to its inherent equitable powers, assess attorneys' fees and costs when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Loc. 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL-CIO*, 118 F.3d 892, 898 (2d Cir. 1997). "In actions for the confirmation and enforcement of arbitral awards," this standard is satisfied "if the party challenging the award has refused to abide by an arbitrator's decision without justification." *Id.* (quotation and alteration omitted). A party will not be found to have acted without justification solely because their "arguments opposing confirmation of the Award and in favor of vacatur were ultimately unsuccessful," if there "is no indication those arguments were made in bad faith." *New York City Dist. Council of Carpenters Pension Fund v. B & A Interiors, Ltd.*, No. 07 CIV. 5620(RJS), 2009 WL 233969, at *5 (S.D.N.Y. Jan. 23, 2009); *see also Great Atl. & Pac. Tea Co. v. Loc. Union No. 338, Retail, Wholesale & Dep't Store Union, AFL-CIO*, No. 95 CIV. 5255 (LLS), 1996 WL 282074, at *3 (S.D.N.Y. May 28, 1996) (denying request for attorney's fees because "[the plaintiff's] arguments for vacatur of the award lack merit, but they do not evince bad faith"). Whether to make an award of attorney's fees is within the Court's discretion. *First Nat. Supermarkets*, 118 F.3d at 898.

Here, while Plaintiff's arguments in favor of vacatur lack merit, the record does not support the conclusion that they were interposed in bad faith. The Court's conclusion in

this regard is particularly influenced by the unusual facts underlying Plaintiff's misconduct argument and the unsettled state of the law regarding whether the FAA's fundamental fairness requirement applies in this context. Accordingly, the Court, in its discretion, declines to award attorney's fees.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 14) is denied and Defendant's motion for summary judgment (Dkt. 15) is granted to the extent that the Court confirms the Arbitration Award but is denied with respect to the request for attorney's fees and costs. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 3, 2022
       Rochester, New York